**OPTIC–ELECTRONIC CORP., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 87–2493.**

United States District Court, District of Columbia.

March 4, 1988.

Whitney Thornton, Washington, D.C., for Optic–Electronic Corp.

John C. Martin, Asst. U.S. Atty., for U.S.

### MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiff filed this action pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*; the Tucker Act, 28 U.S.C. § 1346(a)(2); the Armed Services Procurement Act, as amended by the Competition in Contracting Act, 10 U.S.C. § 2301 *et seq.*, and 18 U.S.C. § 1905.

The case is now before the Court on cross motions for summary judgment filed by the parties. After giving careful consideration to the motions, the oppositions thereto, and the record in this case, the Court concludes that the plaintiff's motion should be denied, the defendants' motion should be granted, and the case should be dismissed with prejudice.

### I

Briefly, the underlying facts are as follow: The plaintiff is engaged in the manufacture and production of electronic, electro-mechanical and optical devices. On or about November 3, 1986, the Department of the Army, through the United States Army Missile Command (MICOM), Redstone Arsenal, Alabama, issued Request

for Proposals No. DAAH01–87–R–0098, hereinafter sometimes referred to as "the RFP", for the procurement of the TOW II subsystem components for the Bradley Fighting Vehicle comprised of Integrated Sight Units, Digital Command Guidance Electronics, and Turret Cables. The purpose of the procurement is to develop a second source for the production of the TOW II subsystem in accordance with Department of Defense procurement policy. Hughes Aircraft Corporation, which developed and designed the TOW II subsystem, is the only current manufacturer of the TOW II.

The RFP advised prospective offerors that MICOM intended to award a firm-fixed price contract to the responsive, responsible offeror submitting the lowest aggregate price. MICOM issued 7 amendments to the RFP prior to the date for submission of the initial offer.

On or about March 13, 1987, the plaintiff, in conjunction with Chrysler Motors Corporation, Military–Electronic Systems, submitted a timely offer to MICOM in response to the RFP as amended. The plaintiff and Chrysler planned to perform the contract as a joint venture. Offers were also submitted by Fraser–Volpe (Fraser), Emerson–Kollsman, Texas Instruments (TI), and Contraves–Goerz Corporation. By letter dated April 16, 1987, Robert White, the MICOM Contracting Officer, notified plaintiff that MICOM had closed all discussions with offerors and that a Best and Final Offer (BAFO) was to be submitted no later than April 30, 1987. Plaintiff contends that MICOM did not conduct technical or price discussions with plaintiff prior to MICOM's request for BAFOs but that MICOM did conduct discussions with other offerors prior to the request for BAFOs.

Plaintiff submitted its first BAFO on or about April 28, 1987. Plaintiff contends that it was the responsive, responsible offeror offering the lowest price to the Government.[1] On or about May 7, 1987, MICOM informed plaintiff that discussions were being reopened allegedly to allow offerors the opportunity to correct omissions/deficiencies in the offerors' production plans. By letter dated May 8, 1987, MICOM advised that it was requesting a second BAFO in order to evaluate proposals for "technical acceptability." MICOM advised plaintiff that its production plan "did not address turret cable procurement nor assembly." Plaintiff contends that "technical acceptability" was not set forth as a basis for evaluation in the RFP. Plaintiff also contends that it expressly addressed the procurement of turret cables in its initial proposal dated March 13, 1987.[2] Plaintiff advised MICOM that the turret cable procurement was addressed in the initial proposal and that MICOM's request for additional information did not constitute a valid basis for reopening discussions.

By letter dated June 4, 1987, MICOM closed discussions and established June 11, 1987 as the deadline for the second BAFO. Plaintiff submitted a second BAFO on June 9, 1987.

By letter dated July 13, 1987, MICOM reopened negotiations for a third time "in order to make necessary changes to the RFP and to conduct further discussions with offerors to ensure complete understanding of the requirements of the solicitation." At the same time, Amendment 0008 was issued. Plaintiff contends that the amendment had only minimal impact on the price offers. The lowest offer on the third BAFO was submitted by TI, while plaintiff was third. The contract was awarded to TI.

Plaintiff contends that it should have been awarded the contract based on its first BAFO, and at least based on the second BAFO. It contends that the procurement procedure utilized in awarding the

---

**1.** At the first BAFO, Fraser submitted the low bid of $36,932,531 while plaintiff submitted a bid of $44,849,954. Fraser was excluded from the competition since, at that time, it appears that there were questions whether it could perform. It is plaintiff's position that it was this action which elevated the plaintiff to being the responsive, responsible offeror offering the lowest price to the Government.

**2.** The offerors had submitted initial proposals prior to submitting their first BAFOs.

contract amounted to an illegal auction and/or illegal technical leveling. Plaintiff also contends that there were improper disclosures or leaks of sensitive procurement information and pricing information to TI. Plaintiff contends that the actions of MICOM in awarding the contract to TI, and in not awarding the contract to plaintiff, was arbitrary and capricious and had no rational basis. Accordingly, plaintiff seeks judgment vacating the award of the contract to TI and awarding the contract to plaintiff.[3]

The defendants move for summary judgment on the ground that the record establishes that there was a rational basis for awarding the contract to TI.

## II

■ Disappointed bidders on government contracts have standing to sue. *See Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). "However, they bear a *heavy burden* of showing either that (1) the procurement official's decision on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations." *Kentron Hawaii, Limited v. Warner,* 156 U.S. App.D.C. 274, 277, 480 F.2d 1166, 1169 (1973) (emphasis this Court's, footnotes omitted).

■ Plaintiff cites to the many problems which arose in this case. First, it is unusual to have the number of BAFOs involved in this case. Plaintiff contends that it should have been awarded the contract after the first BAFO, but rather than do so, MICOM requested additional offers.

Second, there is the appearance that TI was, at the least, favored in the bidding process. When it submitted its initial proposal, it was very high.[4] At the time it submitted its first BAFO, it was higher than the plaintiff and it appeared that plaintiff submitted the lowest responsive, responsible offer, since Frazer had been rejected. Thereafter, when MICOM called for second BAFOs, TI submitted an offer with certain qualifications which probably would or should have led to a determination that TI's offer was not a responsive, responsible offer. Here again plaintiff appears to have made the lowest responsive, responsible offer.

Third, there was a belief by some involved in the process that there were leaks of the pricing information. Moreover, it does appear that there may have been a breach of security, leading MICOM to take steps to tighten up security in its offices.

Finally, because of the number of BAFOs, there is a suggestion that the process was an auction or that there was leveling. It is noted that TI's second BAFO was 46% lower than it initial proposal.

It is clear that there were any number of problems involving the procurement process relating to the subject contract. The defendants recognized this and undertook an investigation. Mr. White, the Contracting Officer was disciplined and MICOM undertook efforts to increase security at its facilities. An investigation was conducted relating to the procurement process. *See* Luster Affidavit. The Investigating Officer, Colonel Luster, found that there had been no release of price information but that there had been two unauthorized releases of procurement information other than price information during the procurement process. He found, however, that the release of the latter information was inadvertent. Luster Affidavit, par. 10. Moreover, he found no evidence that the release of the procurement information had any effect on the awarding of the contract in this case.

Plaintiff argues that there were leaks, but a careful review of plaintiff's support for that statement reveals that the "evidence" offered is hearsay or based upon the speculation of the affiant. For exam-

---

**3.** Texas Instruments (TI) is not a party to this action. That company has been on notice that this action was pending but has elected not to seek to intervene. The defendants moved to join TI as a party defendant, but that motion was denied.

**4.** TI's initial proposal was in excess of $70,000,-000.

ple, the plaintiff submitted the affidavit of Grady C. Holt. Mr. Holt notes that there was a change in security at MICOM during the time of the procurement process in this matter and that he was told that "someone had been caught in the buyer's office." Holt Affidavit, par. 5. "Based upon his experience", he concluded that someone "was caught with their hand in the cookie jar." *Id.* He does not set forth any admissible evidence, and it is clear that his comments amount to little more than speculation. Throughout, the plaintiff cites the Court to rumors as to the procurement in this case, but such rumors are insufficient to overturn the actions of the defendants.

Due to the allegations made by the plaintiff, the Court took the unusual step of allowing the plaintiff, and the defendants to undertake discovery. Plaintiff took a number of depositions. Notwithstanding that discovery, the plaintiff has been unable to establish facts supporting its allegations.

Simply stated, this Court cannot find that the decision made by the defendants was arbitrary or capricious, or that it did not have a rational basis. Defendants freely admit that there were problems, and it appears that they have undertaken certain actions to prevent similar problems from tainting future procurement procedures. And, it does appear that the procedures here were tainted. But, the defendants attempted to deal with what occurred and to make necessary corrections. The Court cannot find that the procurement procedure involved a "clear and prejudicial violation of applicable statues or regulations." *See Kentron Hawaii, supra,* 156 U.S.App.D.C. at 277, 480 F.2d at 1169.

Plaintiffs submitted the affidavit of Rear Admiral Joseph S. Sansone, Jr. USN (Ret). Admiral Sansone's statement is that of an expert in the area of procurement. He sets forth the process in this case and notes a number of irregularities. Based upon his review of the procedure, he would have awarded the contract to plaintiff after the first or second BAFO.

The question before the Court is not how the Court would have awarded the con-

tract; but rather, whether the action of the defendants in awarding the contract to TI was arbitrary and capricious or without a rational basis. This Court can make no such finding, and accordingly, it concludes that the plaintiff's motion should be denied and the defendants' motion should be granted.

Judgment shall be entered in favor of the defendants and this case will be dismissed with prejudice.